United States District Court
Southern District of Texas
**ENTERED**
August 13, 2019
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| David Layne Caldwell, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-18-560 |
| | § | |
| Nancy A. Berryhill, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration | § | |
|     *Defendant*. | § | |

# MEMORANDUM AND OPINION

Plaintiff David L. Caldwell appeals the Social Security Administration Commissioner's final decision denying his application for social security benefits. (D.E. 1.) The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c)(1). (D.E. 10.) Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 13) and Defendant's Cross-Motion for Summary Judgment. (D.E. 17.) Having considered the motions, filings, and applicable law, the court finds that the final decision of the Commissioner should be affirmed.

## 1. Procedural Posture

Caldwell applied for disability insurance benefits on July 2, 2014. (Tr. 195.) Caldwell claimed he was disabled since January 8, 2013, due to hepatitis C, bulging discs in his lower back, pain in his right elbow, pain in his left collar bone,

1

and sinus problems, among others. (Tr. 220, 224.) In his application, Caldwell stated that he was born in 1962. He worked as a restaurant assistant manager, building engineer, mailroom clerk, marketing associate, and restaurant dishwasher. (Tr. 220, 225–26.) The Social Security Administration denied Caldwell's application on September 18, 2014. (Tr. 143–44.) Caldwell appealed on September 24, 2014. (Tr. 149–50.) His application was denied upon reconsideration on October 24, 2014. (Tr. 153–56.) Caldwell requested a hearing.

Administrative Law Judge ("ALJ") Richard A. Gilbert held a hearing on December 2, 2015, in Houston, Texas. (Tr. 44–72.) The ALJ issued a decision on January 27, 2016, finding Caldwell not disabled. (Tr. 7–28.) The Appeals Council denied Caldwell's request for review on March 22, 2017. (Tr. 1–5.) Caldwell filed this complaint in federal court to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five-Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2016). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments is severe. 20 C.F.R. § 404.1520(c) (2016). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2016); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2016) (the "Listings"). If

3

all the criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2016).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2016). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2016). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2016).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and

4

whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing and Administrative Records

#### A. Hearing

At Caldwell's hearing, the ALJ heard testimony from Caldwell, a Medical Expert ("ME"), and a Vocational Expert ("VE"). (*See* Tr. 44–45.) The ME testified that he did not think Caldwell had medical issues at the time of the hearing that would give rise to the complained-of pains in his back. (Tr. 65–66.) The ME testified that Caldwell had stage-four Hepatitis C and other impairments. (Tr. 64–65.) The ME testified that Caldwell did not meet the criteria for any listed impairments. *Id.*; *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 5.05, 12.08 (2016).

The VE was called to testify. Caldwell's representative objected that the VE lacked any basis to estimate the number of jobs in the national, regional, and local economy. (Tr. 68.) The ALJ overruled the objection. (Tr. 68.)

The ALJ asked the VE what work someone with Caldwell's educational background and age could do if they had the physical residual functional capacity (RFC) to do light work, occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and walk about six hours out of an eight-hour workday with normal breaks, sit for about six hours at an eight-hour workday with normal breaks, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 68.) The ALJ limited the hypothetical worker's mental RFC to being able to understand, remember, and carry out short and simple instructions; maintain attention and concentration for extended periods; perform simple, routine, and repetitive tasks; and engage in superficial interaction with the general public and occasional interaction with coworkers and supervisors. (Tr. 69.)

The VE testified that someone with that RFC could not perform any of Caldwell's past work but could work in three other jobs: shredder, laundry sorter, and mail sorter. (Tr. 69.) The VE gave her estimations of the number of jobs that exist in Texas and in the national economy for each job category. (*See* Tr. 69.) The VE testified that her testimony did not conflict with the Dictionary of Occupational Titles ("DOT"). (Tr. 69.)

Caldwell's representative asked the VE what source of information supported her estimations. (Tr. 70.) The VE answered that she used SkillTRAN

Job Browser Pro. (Tr. 70.) The VE also testified that she based her testimony on her own experience placing people who had a similar RFC in the jobs that she identified. (*See* Tr. 71)

**B. Post-hearing brief**

Following the hearing, Caldwell submitted to the ALJ a Post-Hearing Memorandum and Objections to the Vocational Witness's Testimony ("post-hearing brief"). Caldwell raised the following arguments: (1) the record does not show that the VE had the necessary expertise to give opinions on the number of jobs that exist in the local, regional, or national economy; (2) Job Browser Pro is not one of the reliable data sources of which the SSA may take administrative notice pursuant to 20 C.F.R. § 404.1566(d), and there is no known, reliable way to determine the number of jobs by DOT code; (3) Caldwell could not work as a mail sorter because he is restricted to simple, repetitive, and routine work, but a mail sorter demands a higher reasoning level; (4) Caldwell could not work as a shredder, laundry sorter, or mail sorter because updated job market data show those jobs require more than occasional interaction with co-workers and supervisors; (5) updated job market data show that jobs as a shredder and laundry sorter are no longer performed at the unskilled level; and (6) Caldwell should have the opportunity to present evidence of these inconsistencies in the VE testimony at a supplemental hearing. (Tr. 297–303.)

### 4. Analysis

The ALJ issued his decision on January 27, 2016, finding that Caldwell was not disabled. (Tr. 28.) The ALJ also overruled the objections that Caldwell raised in his post-hearing brief. (*See* Tr. 11–15.)

#### A. The ALJ's five-step sequential analysis followed the correct legal rules, and substantial evidence supports his decision.

(1) Step One.

At step one, the ALJ correctly found that Caldwell had not engaged in substantial gainful activity since the alleged disability onset date of January 8, 2013. (*See* Tr. 17.)

(2) Step Two.

At step two, the ALJ found that Caldwell has the following severe impairments: hepatitis C, chronic liver disease, back pain, left elbow pain, unspecified depressive disorder, anxiety, stimulant disorder, and alcohol abuse, among others. (Tr. 17.) Clavicle fracture was the only stated impairment that the ALJ found to be not severe. (Tr. 17–18.)

The ALJ relied on medical records between December 2012, and September, 2014, to support his finding on clavicle fracture. (*See, e.g.*, Tr. 504, 512, 515, 533, 546–50.) The ALJ found that Caldwell received minimal treatment and wore a sling for a few weeks, but no surgery was recommended, and range of motion was

encouraged. (Tr. 18.) An X-ray exam in September 2014 also showed that Caldwell's fracture was healed. (*See* Tr. 533.)

The ALJ's finding at step two is supported by substantial evidence.

(3) Step Three.

At step three, the ALJ found that Caldwell's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. The ALJ appropriately considered Listing Sections 1.02 (elbow pain), 1.04 (back pain), 5.05 (chronic liver disease), 12.04 (affective disorders), 12.06 (anxiety), and 12.09 (substance addiction), and 14.08. (Tr. 18.)

The parties do not dispute that the ALJ's step-three findings are supported by substantial evidence. The court's own review of the record supports the ALJ's findings.

(4) RFC

Before turning to the final two steps of the analysis, the ALJ determined that Caldwell had the following RFC:

> perform light work as defined in 20 CFR 404.157(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can understand, remember, and carry out short and simple instructions; can maintain attention and concentration for extended periods on simple tasks; is limited to simple, routine, repetitive tasks; and can have

superficial interaction with the general public and occasional interaction with coworkers and supervisors.

(Tr. 20.)

In reaching this finding, the ALJ considered Caldwell's function report, his medical records from 2013 to 2015, and Caldwell's testimony at the hearing. (*See* Tr. 20–26, 45–72, 238–45, 415–29, 361–882.) The ALJ also considered the ME's testimony. (*See* Tr. 26, 64–67.) These records support the ALJ's findings.

As opinion evidence, the ALJ considered the Agency consultative examiners' RFC assessments. (Tr. 25.) Dr. Nancy Childs and Dr. San-San Yu assessed Caldwell's physical RFC. Both doctors stated that Caldwell can perform light work. (*See* Tr. 101–02, 118–19.) They also opined that Caldwell had manipulative limitations that prevented him from reaching overhead using left upper extremities but he could reach frequently "left front and laterally." (*See* Tr. 81, 130.) The ALJ gave great weight to both Dr. Childs and Dr. Yu's opinions on Caldwell's RFC but found that "minimal or no evidence" supported their opinions that Caldwell had manipulative limitations. (Tr. 25.) The ALJ gave little weight to non-physician Kim Perkins, LVN, and Dr. Omar Dimachkieh's opinions that Caldwell should not lift more than five pounds until his shoulder pain diminished, finding that their opinions were not consistent with the treating records. (*See* Tr. 25, 700–01.)

The ALJ considered mental RFC assessments by agency psychologists Dr. Matthew Wong and Dr. Thomas Geary. (Tr. 25.) Both opined that Caldwell could understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in the routine work setting. (Tr. 25, *see* Tr. 82–84, 97–99, 115–17, 131–34.) The ALJ gave great weight to Dr. Wong and Dr. Geary's opinions because he found that their opinions were consistent with the medical records. (Tr. 25.)

Substantial evidence supports the ALJ's RFC determination.

(5) Step Four.

At step four, the ALJ found that Caldwell could not perform any past relevant work, relying on the VE's testimony. (*See* Tr. 26, 68–69.) Substantial evidence supports the ALJ's finding at step four.

(6) Step Five.

At step five, the ALJ found that Caldwell could find employment in other work existing in significant numbers in the national economy. (Tr. 26–27.) To support this determination, the ALJ considered Caldwell's age, education, work experience, RFC, and the VE's testimony. (Tr. 27.)

The VE testified that someone with Caldwell's age, education, work experience, and RFC would be able to work as a shredder, laundry sorter, and mail

sorter. (Tr. 27, 68–69.) Pursuant to Social Security Ruling 00–4p (2000), 2000 WL 1898704 ("SSR 00–4p"), the ALJ determined that the VE's testimony was consistent with information contained in the DOT. (Tr. 27.) The VE testified that she relied on SkillTRAN Job Browser Pro. (Tr. 70.) The ALJ found that SkillTRAN "provides a searchable copy of the DOT" and "contains occupational groups to enable access to [the Department of Labor's] OES (Occupational Employment Statistics) data for specialized teaching occupations and other OES occupations to which no DOT occupations have been linked." (Tr. 12.) Based on this finding, the ALJ concluded that "SkillTRAN is an acceptable electronic version of the DOT." (Tr. 12.)

Substantial evidence supports the ALJ's finding at step five. The ALJ's findings at step five relied on the VE's testimony in addition to the ALJ's own consideration of Caldwell's age, education, work experience, and RFC. (*See* Tr. 26–27.) The ALJ's reliance on the VE testimony is consistent with the regulations, which provide that the Agency "may use the services of a vocational expert" when the disability determination depends on whether the claimant's "work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue." 20 CFR §§ 404.1566(e), 416.966(e) (2016).

The VE based her opinions on her own experience placing individuals in jobs with an RFC similar to Caldwell's. (*See* Tr. 71.) The VE also used SkillTRAN Job Browser Pro—which the ALJ considered to be an acceptable electronic version of the DOT—to estimate how many of the identified jobs existed in the local and national economy. (*See* Tr. 12, 70.) DOT is a reliable source of information of which the Administration may take judicial notice. *See* 20 CFR §§ 404.1566(d)(1), 416.966(d)(1) (2016).

Substantial evidence supports the ALJ's step-five findings.

**B. Caldwell's arguments lack merit.**

Caldwell contends that the ALJ did not meet his burden of proof at step five because the ALJ's decision did not address two points he raised in his post-hearing brief. Caldwell's arguments do not merit a reversal.

First, Caldwell argues that the ALJ ignored the "vocational opinion" that he attached to his pre-hearing brief. (*See* Tr. 300.) That opinion was drafted by Ms. Paula Santagati, a third-party vocational counselor in Massachusetts. (*See* Tr. 349–50.) Second, Caldwell argues that the ALJ did not address his objection that, according to the Department of Labor's O*NET, shredder, laundry sorter, and mail sorter required a higher skill level than that of Caldwell's RFC. Caldwell is wrong. The ALJ's decision addressed and overruled each of the six objections that Caldwell raised in his pre-hearing brief. (*See* Tr. 11–15.) The mere fact that the

decision does not mention particular evidence, such as Ms. Santagati's opinion, does not mean that the ALJ did not consider it. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010).

In any case, the substance of Caldwell's arguments do not merit a reversal. His argument that the VE did not consider Ms. Santagati's opinion at best raises a conflict in the evidence. The Commissioner has the full discretion to resolve any conflicts in the evidence. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Ms. Santagati's opinion conflicted with the VE's testimony. She opined that a person limited to occasional interaction with coworkers and supervisors is precluded from any employment. (*See* Tr. 349–50.) Ms. Santagati's opinion does not even mention Caldwell. In contrast, the VE testified—in response to the ALJ's questions tailored to Caldwell's RFC—that someone with Caldwell's RFC could work as a shredder, laundry sorter, or mail sorter. (*See* Tr. 68–69.) The ALJ did not err in according little or no weight to Ms. Santagati's opinion.

Caldwell's challenge to the reliability of the DOT does not alter this court's conclusion that substantial evidence supports the ALJ's findings at step five. *See supra* part 4.A.(6). The VE and the ALJ may rely on the DOT to determine the level of skill required of a particular job. *See* SSR 00–4p ("[W]e rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."); *see also Walker v. Berryhill*, No.

7:16-CV-00150-O-BP, 2017 WL 6883894, at *5–6 (N.D. Tex. Dec. 19, 2017), *report and recommendation adopted*, No. 7:16-CV-00150-O-BP, 2018 WL 339307 (N.D. Tex. Jan. 9, 2018) (collecting cases). The VE testified that shredder, laundry sorter, and mail sorter required skill levels within Caldwell's RFC, relying on SkillTRAN and her own experience placing people in jobs. (*See* Tr. 71.) Her testimony was consistent with the DOT, which classifies those jobs as requiring the specific vocational preparation level ("SVP") of 2 or less. (*See* Tr. 69–71.) Caldwell's broad challenge to the DOT's reliability does not merit a remand.

## 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each of the five sequential steps. The ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the Court GRANTS Defendant's cross-motion for summary judgment and DENIES Plaintiff's motion for summary judgment. The decision of the Social Security Commissioner will be AFFIRMED.

The court will enter a separate final judgment.

Signed at Houston, Texas on August 13, 2019.

_____
Peter Bray
United States Magistrate Judge